ANIMAL HEALTH INSTITUTE and Colorado Serum Company, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, The Honorable Bob Bergland, Secretary, Department of Agriculture, The Honorable P. R. Smith, Assistant Secretary for Marketing Services, F. J. Mulhern, D.V.M., Administrator of the Animal and Plant Health Inspection Service, Department of Agriculture, Defendants,

and

American Association of Intrastate Biological Laboratories, Intervenor Defendant.

Civ. A. No. 78–K–796.

United States District Court, D. Colorado.

March 10, 1980.

Thomas D. Smart, Jr., Denver, Colo., Eugene I. Lambert, Washington, D. C., for plaintiffs.

Brian G. Kennedy, C. Max Vassanelli, U. S. Attys., Dept. of Justice, Washington, D. C., for defendants.

Syril I. Shraiberg, Denver, Colo., George T. Qualley, Omaha, Neb., for intervenor.

MEMORANDUM OPINION AND ORDER

KANE, District Judge.

On August 7, 1978, plaintiffs, Animal Health Institute and Colorado Serum Company filed a complaint charging that defendants have established and continue to pursue a policy of not enforcing the provisions of the Virus-Serum-Toxin Act, 21 U.S.C. §§ 151–158, against unlicensed producers of veterinary biological drug products. Plaintiffs seek a declaratory judgment construing the provisions of 21 U.S.C. § 151, *et seq.*, as prohibiting the preparation of veterinary biological drugs manufactured within the United States at *any establishment* that has not been licensed by the Secretary of Agriculture. Plaintiffs also seek a mandatory injunction directing defendants to enforce the provisions of 21 U.S.C. §§ 151, *et seq.*, against these unlicensed manufacturers.

In response to plaintiffs' allegations, defendants maintain that federal licenses are required only of those manufacturers whose activities occur in areas under exclusive federal jurisdiction or involve interstate shipment of animal biologics. Defendants refer to manufacturers who confine their activities to one state as "intrastate" producers. They are characterized as such even though their activities could constitutionally be subjected to federal regulation; that is, they probably could be found to affect interstate commerce. Nevertheless, according to defendants, the Virus-Serum-Toxin Act does not authorize regulation of those producers whose activities are confined to one state. Thus, notwithstanding their effect on interstate commerce, in the absence of a congressional mandate, the Department of Agriculture is powerless to regulate their activities.

This case is before the court pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706; and 28 U.S.C. §§ 1331, 1337, 2201–02. No facts are in issue and the case can properly be decided on issues of law.

Plaintiffs urge that 21 U.S.C. § 151 sets forth two distinct prohibited acts: (1) preparation and sale of biological products that are "worthless, contaminated, dangerous, or harmful", and (2) preparation that has not been under and in compliance with regulations prescribed by the Secretary of Agriculture, at a licensed establishment. This controversy arises from plaintiffs' position that the licensing requirement as set forth in § 151, has broader application than the prohibition against the preparation and sale of worthless products. Although § 151 of the Virus-Serum-Toxin Act prohibits two types of conduct, the jurisdictional ambit of the licensing requirement is no broader than the prohibition against worthless products.

21 U.S.C. § 151 reads as follows:

It shall be unlawful for any person, firm, or corporation to prepare, sell, barter, or exchange in the District of Columbia, or in the Territories, or in any place under the jurisdiction of the United States, or to ship or deliver for shipment from one State or Territory or the District of Columbia to any other State or Territory or the District of Columbia, any worthless, contaminated, dangerous, or harmful virus, serum, toxin, or analogous product intended for use in the treatment of domestic animals, and no person, firm, or corporation shall prepare, sell, barter, exchange, or ship *as aforesaid* any virus, serum, toxin, or analogous product manufactured within the United States and intended for use in the treatment of domestic animals, unless and until the said virus, serum, toxin, or analogous product shall have been prepared, under and in compliance with regulations prescribed by the Secretary of Agriculture, at an establishment holding an unsuspended and unrevoked license issued by the Secretary of Agriculture as hereinafter authorized. (Emphasis added).

The primary source of controversy is the phrase, "as aforesaid". Plaintiffs maintain incorrectly that a plain reading of this provision leads to the conclusion that "as aforesaid" only modifies the word ship, but not prepare, sell, barter or exchange. According to plaintiffs' construction of this provision, "all establishments in which veterinary biological products are prepared must be licensed by the Secretary of Agriculture regardless of whether the products are subsequently distributed across state lines. (Complaint ¶ 13).

■ It is clear, however, that such a construction of § 151 is contrary to the plain language of the provision and the intent of Congress. It is equally clear that the Act does not, nor was it ever intended for it to extend federal regulation to the "intrastate" sale and manufacture of veterinary biological products. "As aforesaid" modifies prepare, sell, barter and exchange, in addition to ship. These five verbs should be construed as a unity. As defendants correctly state:

The "license" provisions of section 151 repeat precisely the same five verbs used in the "worthless" products clause immediately preceding: prepare, sell, barter, exchange, or ship. Each of these verbs is

restricted geographically in the "worthless" products clause of the section; by far the most reasonable construction of the repetition of these five verbs in the next phrase is that Congress intended the same restrictions to apply to each of the verbs and used "as aforesaid" rather than repeating the somewhat cumbersome phraseology in full.

(Brief in Support of Defendants' Motion for Summary Judgment, at pp. 6–7.)

Support for this construction is found in § 154 which provides:

> The Secretary of Agriculture is hereby authorized to make and promulgate from time to time such rules and regulations as may be necessary to prevent the *preparation, sale, barter, exchange, or shipment as aforesaid* of any worthless, contaminated, dangerous, or harmful virus, serum, toxin, or analogous product for use in the treatment of domestic animals, and to issue, suspend, and revoke licenses for the maintenance of establishments for the preparation of viruses, serums, toxins, and analogous products, for use in the treatment of domestic animals, intended for sale, barter, exchange, or shipment as aforesaid. (Emphasis added).

It is clear that in the first part of § 154, "as aforesaid" modifies preparation, sale, barter, and exchange, as well as shipment. To construe "as aforesaid" so as to modify only shipment leads to the incorrect result that § 154 authorizes the Secretary to promulgate rules to prevent the preparation, sale, barter or exchange of worthless and harmful products anywhere in the United States. Such a construction is wrong, since as plaintiffs admit, pursuant to the first clause of § 151 preparation, sale, barter or exchange of harmful products is prohibited only if federal territory or interstate shipment is involved. As is true of the second clause of § 151, Congress used "as aforesaid" in the first clause of § 154 as a convenient shorthand in order to obviate the necessity of repeating the "somewhat

cumbersome phraseology" regarding jurisdiction in full.

The legislative history of the Virus-Serum-Toxin Act is extremely sparse. It is, however, supportive of the view that Congress did not intend to require licensing of manufacturers who confine their activities to one state. Defendants cite the following passage:

> During the House Hearings, Dr. A. M. Farrington, Assistant Chief of the Bureau of Animal Industry, explained that the language that is now the Virus-Serum-Toxin Act "follows very closely the law which is now in operation in the United States Public Health Service, where they supervise the manufacture of toxins and viruses for the treatment of human beings." *Estimate of Appropriations for the Fiscal Year Ending June 30, 1914: Hearings Before the House Comm. on Agriculture,* 62d Cong., 3d Sess. 23 (1913) . . .

(Brief in Support of Defendant's Motion for Summary Judgment, at p. 11.)

The law referred to above as regulating human biological products was enacted in 1902. The 1902 Act required the preparation of biological products at properly licensed establishments. Further, licensure was required only of products which were prepared or sold in interstate commerce or in areas under federal jurisdiction. The Virus-Serum-Toxin Act is properly compared to the 1902 Act because of similarity of language and of subject matter. In fact, the Virus-Serum-Toxin Act was modeled after the 1902 Act.

Agency interpretations of the Virus-Serum-Toxin Act provide additional support for defendants' position. In 1913, the Department of Agriculture enacted regulations to aid in the enforcement of the provisions of the Virus-Serum-Toxin Act. Regulation 2 (two) makes it clear that intrastate manufacturers of biological products are not subject to the licensing power of the Secretary of Agriculture.[1]

---

1. Regulation 2 provides: "No person, firm or corporation shall prepare, sell, barter, or exchange in the District of Columbia or in any

Territory of the United States or in any place under the jurisdiction of the United States, or ship or deliver for shipment from one State or

An opinion by the Solicitor of Agriculture on August 16, 1915 suggests an interstate requirement for licensing of establishments.[2] On January 17, 1978, Assistant General Counsel Harold M. Carter continued to adhere to previous Department of Agriculture interpretations of the Act.[3] In response to plaintiffs' questions regarding the scope of jurisdiction under the Virus-Serum-Toxin Act, Mr. Carter stated:

> After a thorough research of the legislative history of the Act and of former opinions of this office, it is our opinion that the Act does not authorize the Secretary of Agriculture to regulate the activities of an establishment which prepares biological products solely for intrastate commerce.

Mr. Carter also expressed the view that in the Department's opinion, based on a plain reading of the Act, the phrase "as aforesaid" modifies not only shipment but also preparation, sale, barter and exchange. It is emphasized that the Virus-Serum-Toxin Act was closely modeled after the Act of 1902 regulating human biologics and that a similar construction of the jurisdictional scope of the Acts is in order; the 1902 Act clearly excluded intrastate producers from its licensing requirement.

■ Administrative constructions given statutes by an agency charged with its administration should be followed unless there are compelling indications that it is wrong. *Kenneth v. Schmoll*, 482 F.2d 90 (10th Cir. 1973); *Ute Indian Tribe of Unitah & Queay Res. v. Probst*, 428 F.2d 491 (10th Cir. 1970). No such compelling indications exist in the present case. In fact, the Department of Agriculture's construction of § 151 of the Virus-Serum-Toxin Act is consistent with the literal meaning of the provision. The Department's construction follows the intent of Congress.

■ Even if plaintiffs' construction of the provision is a reasonable one, great deference must still be given to the Department of Agriculture's construction. Administrative interpretations of statutes by an agency charged with its administration should be accepted if they are reasonable, even though there might be another interpretation which itself is reasonable. *American Petroleum Institute v. E. P. A.*, 540 F.2d 1023 (10th Cir. 1976); *Brennan v. Occupational Safety and Health Commission*, 513 F.2d 553 (10th Cir. 1975); *Kenneth v. Schmoll, supra.* During the 67 year history of the Act, the Department of Agriculture has consistently refused to enforce its license requirement against "intrastate" manufacturers of animal biologics. It has narrowly interpreted the jurisdictional scope of the Virus-Serum-Toxin Act. The Department's interpretation is not only reasonable but correct.

Defendants have admitted that there exists a need for the licensing of manufacturers of animal biologics who confine their activities to one state. Defendants also concede that Congress probably has the constitutional authority to enact such legislation. Nevertheless, it is clear that the Virus-Serum-Toxin Act as it is currently written was not intended to cover "intrastate" manufacturers. To rule otherwise would in effect constitute an intrusion into what is essentially a political matter that is properly left for resolution by the legislative branch of government.

---

Territory or the District of Columbia to any other State or Territory or the District of Columbia any virus, serum, toxin, or analogous product manufactured within the United States unless and until the said virus, serum, toxin, or analogous product shall have been prepared at an establishment holding any unsuspended and unrevoked license issued by the Secretary of Agriculture.

2. Opinion of the Solicitor of the United States Department of Agriculture to the Bureau of Animal Industry, dated August 16, 1915, regarding the "Virus Act".

3. Opinion of the Assistant General Counsel, Regulatory and Marketing, United States Department of Agriculture to Francis J. Mulhern, Administrator, Animal and Plant Health Inspection Service dated January 7, 1978, regarding the Applicability of the Virus-Serum-Toxin Act of March 4, 1913 to intrastate activities.

Accordingly, IT IS ORDERED that defendants' motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied.

IT IS FURTHER ORDERED that this complaint and civil action are dismissed with prejudice, each party to bear its own costs.