LYNNBROOK FARMS, Plaintiff,

v.

SMITHKLINE BEECHAM CORPO-
RATION and Norden Laborato-
ries, Defendants.

No. 94–1227.

United States District Court,
C.D. Illinois,
Peoria Division.

March 30, 1995.

Matthew C. Potts, Whitney & Potts, Ltd., Elmwood, IL, James A. Davis, James Allen & Assoc., P.C., Tremont, NE, for plaintiff.

Thomas R. Nelson and John M. McGarry, Baker & McKenzie, Chicago, IL and Scott A. Smith and Janell M. Gabor, Popham, Haik, Schnobrich, Schnobrich & Kaufman, Ltd., Minneapolis, MN for defendant Smithkline Beecham Corp.

## ORDER

MIHM, Chief Judge.

This matter comes before the Court on Defendants' Motion to Dismiss [7] and Motion for Summary Judgment [15]. Pursuant to Local Rule 1.4, the Motion to Dismiss was referred to Magistrate Judge Robert J. Kauffman. While reviewing the motion, Magistrate Kauffman determined that due to the existence of the affirmative defense of federal preemption, the Motion to Dismiss should not be ruled upon until the parties had briefed the preemption issue. (Order dated October 12, 1994). The Defendants subsequently filed their Motion for Summary Judgment, which relies solely on the issue of federal preemption in support of the motion. This Court heard oral argument on the motion on February 24, 1995 and gave the parties leave to file proposed findings of fact and conclusions of law. (Transcript of 2/24/95 hrg. at 22–23). Defendants timely filed their Proposed Findings of Fact and Conclusions of Law [23]. Plaintiff has apparently elected not to file a proposed pleading. The Court has reviewed the pleadings, affidavits and other materials submitted to the Court in support of and in opposition to the Motion for Summary Judgment and, for the reasons set forth herein, GRANTS the Motion for Summary Judgment [15] and finds the Motion to Dismiss DENIED [7] as moot.

## Findings of Fact

Plaintiff, Lynnbrook Farms, is a general partnership organized under the laws of Illinois. (Amended Complaint at 1). Defendant Norden Laboratories merged into Smithkline Beecham on or about January 1, 1992. (Answer to Amended Complaint at 3). Prior to the merger, Norden Laboratories existed as a Delaware corporation. (Amended Complaint at 2). Defendant Smithkline Beecham is a corporation organized under the laws of Pennsylvania. *Id.* at 1–2. The Defendants will hereafter be referred to as "SBC." The parties have stipulated that the amount in controversy is in excess of $50,000. (Answer to Amended Complaint at 2). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

The Amended Complaint, filed June 6, 1994, alleges that Defendants manufacture animal vaccines for ultimate sale to the public in the State of Illinois. (Amended Complaint at 3). Defendants deny that their animal vaccines were sold to various firms for distribution to the public, answering instead that the "vaccines in question were subject to use, evaluation and administration by veterinary physicians under the learned intermediary doctrine." (Answer to Amended Complaint at 4).

The vaccines at issue in this suit are *CattleMaster4 and Ultrabac7/Somubac. (Amended Complaint at 3, 11). The United States Department of Agriculture ("USDA") has licensed each of the vaccines, *CattleMaster4 under USDA License No. 1187.21 and Ultrabac7/Somubac under USDA License No. 4723.00. (Affidavit of Cyril G. Gay, D.V.M., Ph.D. at ¶¶ 3–9). Plaintiff contends that it purchased these vaccines from the Miller Company in Morton, Illinois. (Amended Complaint at 3, 11). According to the Amended Complaint, Plaintiff intended to use these vaccines on its cattle to prevent debilitating disease and/or mortal infection. *Id.* at 3, 12. Plaintiff alleges that notwithstanding its use of the vaccines, some of its cattle contracted debilitating disease and died. *Id.* at 4, 12–13. Other cattle had to be disposed of at a loss due to the extent of debilitations. *Id.* The Amended Complaint asserts that Plaintiff took all recommended precautions, including refrigerating the vaccines, and despite these actions the vaccines did not perform as they were intended. *Id.* at 4, 12. Plaintiff further asserts that these vaccines proximately caused the debilitation and death of its cattle. *Id.*

The Amended Complaint presents eight counts. In Counts I and VII, Plaintiff asserts that SBC is liable, under a strict liability theory, for the defective, dangerous, and inefficacious nature of *CattleMaster 4 and Ultrabac7/Somubac, respectively. Counts II and III contain allegations that SBC breached implied warranties of fitness for a particular purpose and merchantability under the Illinois Uniform Commercial Code, 810 ILCS 5/1–101, et seq. Count IV states a claim for fraudulent misrepresentation. Count V alleges that SBC violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq., through the advertising and promotion of *CattleMaster4. In Counts VI and VII, Plaintiff contends that the *CattleMaster4 and Somubac vaccines were defective in that the product labeling on the vaccines failed to warn against certain alleged dangers arising out of their use.

### Conclusions of Law

■ Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has borne its burden of identifying those portions of the pleadings, answers to interrogatories, etc., that demonstrate there is no genuine issue of material fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Id. at 587, 106 S.Ct. at 1356 (citations omitted). When considering a motion for summary judgment, courts must give the benefit of all inferences to the party opposing the motion and examine the record in the light most favorable to that party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993).

In this matter, the Court gives the benefit of all inferences to the Plaintiff, for purposes of the Motion for Summary Judgment, regarding Plaintiff's allegations that it purchased the vaccines, *CattleMaster4 and Ultrabac7/Somubac, for use on its cattle; that it properly utilized these vaccines; and that its cattle contracted debilitating disease and either died or had to be disposed of at a loss. All this being true, however, will not permit the Plaintiff to survive summary judgment if the Virus–Serum–Toxins Act ("VSTA") preempts Plaintiff's state common law and statutory claims.[1] In the event that this Court finds VSTA to preempt state law, Plaintiff, for all the injury sustained by it, will have no remedy at law.

■ The presumption against preemption, especially where the state law being usurped is a traditional state police power, is well established. California v. ARC America Corp., 490 U.S. 93, 100, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989); Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law"); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) ("we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress") (citations omitted). The same presumption applies when an agency acts to preempt the field. Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). In instances where agency preemption is alleged, however, a "narrow focus on Congress' intent to supersede state law [is] misdirected," as "[a] preemptive regulation's force does not depend on express congres-

1. All animal vaccines marketed in the United States are regulated by the USDA pursuant to authority delegated to it by Congress under VSTA. 21 U.S.C. §§ 151–158. USDA's Animal and Plant Health Inspection Service ("APHIS") is responsible for administering VSTA. 9 C.F.R. § 101.2; Foundation on Economic Trends v. Lyng, 680 F.Supp. 10, 11 (D.D.C.1988).

sional authority to displace state law." *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 154, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982).

■ Congress may act to preempt state law in three ways. Express preemption exists where Congress has legislated in clear and unequivocal terms, found within the text of the statute, that an act preempts state law. *See, e.g., Cipollone v. Liggett Group, Inc.,* — U.S. —, — – —, 112 S.Ct. 2608, 2617–20, 120 L.Ed.2d 407 (1992). Implied preemption may be found (1) where state law actually conflicts with an act of Congress, or (2) where federal legislation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Finally, state law may be preempted by federal regulations, *Hillsborough, supra,* at 713, 105 S.Ct. at 2375, where a federal agency, acting within the scope of its congressionally delegated authority, acts to preempt state law. *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982) (citations omitted); *City of New York v. F.C.C.,* 486 U.S. 57, 63–64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988) (citing *Louisiana Public Service Com'n v. F.C.C.,* 476 U.S. 355, 367–71, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986)).[2]

■ In the case at bar, Defendants have eschewed the express and implied preemption arguments, relying solely upon agency preemption to support its Motion for Summary Judgment. (Tr. of 2/24/95 Oral Argument at 3–4). Thus, this Court must determine first whether the agency which regulated cattle vaccines, APHIS, was acting within its congressionally delegated authority. *City of New York, supra,* at 63–64, 108 S.Ct. at 1641–42. Once this Court finds that APHIS was acting within its grant of authority, it must determine whether the language APHIS chose in promulgating its regulations is sufficiently broad to preempt each of

Plaintiff's claims. *Id.* at 66, 108 S.Ct. at 1643.

Under VSTA, all animal vaccines sold in the United States, and all establishments at which animal vaccines are produced, must be licensed by the USDA. 21 U.S.C. § 154 (West Supp.1994). Within USDA, licensure of animal vaccines and vaccine-producing establishments is regulated by the USDA's APHIS. 9 C.F.R. § 101.1, *et seq.* This Court finds that Congress has delegated broad authority to the USDA and APHIS to promulgate and enforce "such rules and regulations as may be necessary" for the preparation and sale of animal vaccines in the United States. 21 U.S.C. § 154 (West Supp. 1994).

In 1980 and 1981, several federal court opinions issued which found that the breadth of VSTA was limited to "interstate" commerce. *See Animal Health Institute v. U.S. Dept. of Agriculture,* 487 F.Supp. 376 (D.Colo.1980); *Grand Laboratories, Inc. v. Harris,* 644 F.2d 729 (8th Cir.1981), *on rehearing,* 660 F.2d 1288 (8th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982). These decisions found that the USDA did not have the authority to regulate the production and sale of products made within a single state. *Animal Health Institute,* 487 F.Supp. at 379; *Grand Laboratories,* 644 F.2d at 731; 660 F.2d at 1289. Congress responded to these cases by amending VSTA to eliminate any distinction between "intrastate" and "interstate" manufacture and distribution of animal vaccines. S.Rep. No. 99–145, 99th Cong., 1st Sess. at 338–339 (1985), *reprinted in* 1985 *U.S. Code Congressional & Administrative News,* 1676, 2004–2005. This congressional action placed the manufacture and sale of all animal vaccines under the control of the United States federal government. 21 U.S.C. § 151.

The legislative history surrounding the 1985 amendments to VSTA indicates Congress' intent to create a national, uniform standard for the preparation and sale of animal vaccines. S.Rep.No. 99–145. In this

---

**2.** The regulations of a federal agency will preempt state or local laws which conflict with or frustrate the purposes of the regulations. *City of New York, supra,* at 64, 108 S.Ct. at 1642. In

certain situations, the agency may declare its authority exclusive, which then requires finding any state or local effort to regulate within the area preempted. *Id.*

excerpt of legislative history, Congress noted that an "intrastate/interstate" distinction no longer exists for comparable products such as animal drugs, food additives, medical devices, or pesticides. *Id.* Congress concluded that due to the drastic changes in animal agriculture since 1913, including the presence of "truly national markets," a uniform regulatory standard would better serve "livestock owners, veterinarians, and the American public." *Id.*

As a basis for comparison, this Court studied the decision in *City of New York*, in which the Supreme Court decided whether the Federal Communications Commission ("FCC") had properly acted within its congressionally delegated power in preempting state and local cable television quality standards. 486 U.S. at 66, 108 S.Ct. at 1643. The Court turned to both the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559 (1982 ed., Supp. IV), and the Communications Act of 1934 to analyze the breadth of power the FCC had been granted by Congress. *Id.* at 60–62, 108 S.Ct. at 1640–41. In an earlier decision, *Capital Cities Cable, Inc. v. Crisp,* the Court had found that Congress authorized the FCC "to regulate all aspects of interstate communication by wire or radio." 467 U.S. 691, 700, 104 S.Ct. 2694, 2701, 81 L.Ed.2d 580 (1984). According to the *Crisp* Court, this authority extended to "all regulatory actions 'necessary to ensure the achievement of the Commission's statutory responsibilities.'" *Id.* (quoting *F.C.C. v. Midwest Video Corp.,* 440 U.S. 689, 706, 99 S.Ct. 1435, 1444, 59 L.Ed.2d 692 (1979)). Shortly after the *Crisp* decision, Congress enacted the 1984 Cable Act, which states that Congress intended to "establish a national policy concerning cable communications" and to "minimize unnecessary regulation that would impose an undue economic burden on cable systems." 47 U.S.C. §§ 521(1), (6) (1982 ed., Supp. IV).

The language in the 1985 amendments to VSTA are no less broad than the grant of authority to the FCC in the 1934 and 1984 Acts. The language Congress chose in enacting the 1985 amendments to VSTA indicates its intent to grant the USDA broad powers "necessary to prevent and eliminate burdens on ... commerce and to effectively regulate ... commerce." 21 U.S.C. § 159. Congress gave the Secretary of Agriculture the power to "make and promulgate from time to time such rules and regulations as may be necessary to prevent the preparation, sale ... or shipment ... of any worthless, contaminated, dangerous or harmful virus, serum, toxin, or analogous product...." 21 U.S.C. § 154.

Having found that the congressional grant of power to USDA's APHIS was broad enough to include the authority to preempt state laws, this Court must now turn to the second prong of this analysis, which is whether the language that APHIS chose in promulgating its regulations is sufficiently broad to preempt each of Plaintiff's claims. *de la Cuesta, supra,* at 153–54, 102 S.Ct. at 3022–23. "[W]here Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *Id.*

SBC asserts that APHIS has expressly construed the 1985 amendments to VSTA as reserving to the federal government the exclusive responsibility for the safety, efficacy, purity, potency, and labeling of animal vaccines. Further, SBC seeks to invoke the rule that unless an agency's decision to preempt state law is arbitrary or capricious, it must be given controlling weight by the reviewing court. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984).

In the August 27, 1992 Federal Register, APHIS articulated its interpretation of the 1985 amendments, in relevant part, as follows:

> Where safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field. This includes, but is not limited to the regulation of labeling. Under [the 1985 amendments to VSTA], Congress clearly intended that there be national uniformity in the regulation of these products.

\* \* \* \* \* \*

APHIS ... does not agree that States should be allowed to add various restrictions ... based upon a need to protect domestic animals or the public health, interests or safety. Any restrictions, other than those which are necessary to address a local disease condition, should be Federally imposed so that they are uniform nationwide.

\* \* \* \* \* \*

[S]tates are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product. Similarly, labeling requirements which are different from or in addition to those in the regulations under the Act may not be imposed by the States. Such additional or different requirements would thwart the Congressional intent regarding uniform national standards, and would usurp USDA's authority to determine which biologics are pure, safe, potent and efficacious.

57 *Fed.Reg.* 38758, 38759 (August 27, 1992).

The Court must turn to the analysis set out in *Chevron* to determine whether or not this interpretation of the 1985 amendments is to be given controlling weight. 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781. As Congress has not directly spoken to the issue of preemption, the Court must decide whether APHIS' declaration of preemption is based upon a permissible construction of VSTA. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82. APHIS' interpretation can be found to be based upon a permissible construction, thus entitled to controlling weight, if it is not arbitrary, capricious or manifestly contrary to VSTA.[3] *Id.*

The language of the amendments, including those sections aforementioned which grant the Secretary of Agriculture the authority to "make and promulgate ... such rules and regulations as may be necessary to prevent the preparation, sale, barter, exchange or shipment ... of any worthless contaminated, dangerous or harmful ... se-

rum, toxin, or analogous product," 21 U.S.C. § 154, "to prevent and eliminate burdens on [interstate] commerce and to effectively regulate such commerce," 21 U.S.C. § 159, allow the permissible interpretation that APHIS may preempt state law. The choice to preempt state law represents "a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute," *United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961), in that it would be difficult to prevent or eliminate burdens on interstate commerce if each of the 50 states could impose different regulations on animal vaccines. Thus, APHIS' reading is neither arbitrary nor capricious. Further, it is congruous with VSTA's purpose of regulating the safety, efficacy, purity, potency, and labeling of animal vaccines.

Finally, the Court must analyze the various claims of Plaintiff to determine whether the legal duty that is the predicate of the common law damages counts, *Cipollone, supra,* at ——, 112 S.Ct. at 2621, would impose a requirement upon the Defendants which is "different from, or in addition to, those imposed by the USDA regarding the safety, efficacy, potency, or purity of a product." *Cipollone, supra,* at ——, 112 S.Ct. at 2621; 57 *Fed.Reg.* 38758, 38759 (August 27, 1992).

It is noteworthy that several Courts of Appeal, including the Seventh Circuit, have previously addressed language similar to that of APHIS' regulations in the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136, *et seq.* Section 136v(b) of FIFRA, entitled Authority of the States, provides as follows:

> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required by this subchapter.

7 U.S.C. § 136v.

The majority of circuits to consider FIFRA's preemptive reach, including the Seventh Circuit, find this language to preempt

---

**3.** The Supreme Court held in *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974), that "[t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."

both positive enactments and common law. *MacDonald v. Monsanto Co.,* 27 F.3d 1021 (5th Cir.1994); *Bice v. Leslie's Poolmart, Inc.,* 39 F.3d 887 (8th Cir.1994); *King v. E.I. Dupont De Nemours and Co.,* 996 F.2d 1346 (1st Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364 (7th Cir.1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.1993), *cert. denied by Papas v. Zoecon Corp.,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

Applying this logic, Counts I and VII of Plaintiff's Amended Complaint, which allege the two vaccines were defective, dangerous, and inefficacious, would impose a duty on SBC regarding the safety, efficacy, potency, or purity of the cattle vaccines which would be in addition to or different from those regulations promulgated by the USDA and enforced by APHIS.

Similarly, Counts II and III allege that SBC breached implied warranties of fitness of a particular purpose and merchantability, respectively. These allegations implicate the safety and efficacy of SBC's cattle vaccines and, as such, are preempted by VSTA.

Counts IV and V state claims for fraudulent misrepresentation and false advertising, alleging that Defendants knew the vaccine \*CattleMaster4 was dangerous and lacked efficacy. These claims are inherently failure to warn claims which, if not preempted, would allow a jury to determine that the vaccine was unsafe and/or inefficacious. Thus, a requirement different from or in addition to those set out by APHIS would be imposed upon SBC. These Counts are both preempted.

With regard to the failure to warn claims, Counts VI and VIII, APHIS has expressly stated that "labeling requirements which are different from or in addition to those in the regulations under the Act may not be imposed by the States." 57 *Fed.Reg.* at 38759. Thus, to the extent that Plaintiff's failure to warn claims would require SBC to alter the labels of its cattle vaccines, they are also preempted.

All this being said, the Court is troubled by the absence of a federal remedy. Based on the breadth of APHIS' congressional grant of authority, the express language of the regulations, and the agency's permissible interpretation of VSTA, however, this Court can come to no other viable conclusion.

### Conclusion

For the reasons set forth herein, the Court GRANTS the Defendants' Motion for Summary Judgment in favor of Defendants Smithkline Beecham and Norden Laboratories and against Plaintiff, Lynnbrook Farms, and finds the Motion to Dismiss DENIED as moot.