Roger MURPHY, Plaintiff,

v.

SMITHKLINE BEECHAM ANIMAL HEALTH GROUP, A Pennsylvania Partnership and its Partners; Smith-Kline Beecham Corporation, a Pennsylvania Corporation; Norden Laboratories, Inc., a Delaware Corporation; Adams Pharmaceutical, Inc., a Florida Corporation; and Beecham, Inc., a Tennessee Corporation, Defendants.

Civ. A. No. 95–1002–DES.

United States District Court,
D. Kansas.

Sept. 21, 1995.

Gregory L. Bauer, Bauer, Pike, Pike & Johnson, Chtd., Great Bend, KS, James A. Davis, Davis & Associates, P.C., Fremont, NE, for plaintiff.

Carol A. Beier, Foulston & Siefkin, Wichita, KS, Scott A. Smith, Janell M. Gabor, Popham, Haik, Schnobrich & Kaufman, Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 13).

## I. BACKGROUND

The plaintiff, Roger Murphy ("Murphy"), is a resident of the state of Kansas engaged in the cattle feeding business. The defendant, SmithKline Beecham Corporation ("SmithKline"), is a Pennsylvania corporation, and is the successor-in-interest to SmithKline Beecham Animal Health Products, Adams Veterinary Research, Inc., Norden Laboratories, Inc., and Beecham, Inc.

Murphy alleges that from on or about October 1993, until about January 1994, he injected his cattle with vaccines manufactured by the defendant. The vaccines at issue in this case, BoviShield 4 and BoviShield 4 + L5, were licensed by the United States Department of Agriculture ("USDA") in 1988. The plaintiff asserts that the vaccines were defective and that, as a result, the vaccines induced or failed to prevent debilitating and mortal infections and diseases in the plaintiff's cattle. Specifically, the plaintiff states claims of breach of implied warranty, false advertising, fraudulent misrepresentation, negligence, and failure to warn of dangers associated with use of the vaccines.

## II. DISCUSSION

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When addressing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

The defendant argues that the plaintiff's state law claims are pre-empted by federal law. Specifically, SmithKline argues that USDA, through its Animal and Plant Health Inspection Service ("APHIS"), has pre-empted state law with regard to animal vaccines. According to the defendant, Congress granted APHIS pre-emptive authority in the Virus–Serum–Toxin Act ("VSTA"), 21 U.S.C. §§ 151–159. Therefore, while the court gives the benefit of all factual inferences to the plaintiff, a finding by the court that the

plaintiff's claims are pre-empted by federal law would entitle the defendant to judgment as a matter of law.

■ The Supremacy Clause of the United States Constitution states that "the Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The phrase "Laws of the United States" encompasses both statutes and statutorily authorized regulations. *City of New York v. FCC*, 486 U.S. 57, 63, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). Therefore, a federal agency acting within its congressionally delegated authority may effectively pre-empt state law. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986).

■ To determine whether an agency may properly displace state law, one must "examine the nature and scope of the authority granted by Congress to the agency." *Id.* at 374, 106 S.Ct. at 1901. It is not necessary, however, that Congress expressly authorize an agency to pre-empt state law. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982). For example, where Congress empowered the FCC to "[m]ake such rules and regulations and prescribe such restrictions and conditions ... as may be necessary to carry out the provisions" of the communications laws, the Supreme Court held that the FCC had acted within its statutory authority when it pre-empted state standards governing television signals. *City of New York*, 486 U.S. at 66–67, 108 S.Ct. at 1643–44 (quoting 47 U.S.C. § 303(r)).

In order to decide whether the plaintiff's state law claims are pre-empted by federal law, the court must conduct a three-step analysis. First, has Congress authorized APHIS to pre-empt state law? If so, has APHIS acted to pre-empt state common law? Finally, if APHIS regulations do pre-empt state common law, do the regulations pre-empt the causes of action asserted by the plaintiff?

### 1. *Did Congress authorize APHIS to pre-empt state law?*

21 U.S.C. § 154 provides as follows:

The Secretary of Agriculture is hereby authorized to make and promulgate from time to time such rules and regulations as may be necessary to prevent the preparation, sale, barter, exchange, or shipment as aforesaid of any worthless, contaminated, dangerous, or harmful virus, serum toxin, or analogous product for use in the treatment of domestic animals....

In 21 U.S.C. § 159, Congress found that "regulation of the products and activities as provided in [VSTA] is necessary to prevent and eliminate burdens on [interstate and foreign] commerce and to effectively regulate such commerce."

■ The United States Supreme Court has held that similar broad congressional grants bestow upon administrative agencies the authority to promulgate regulations pre-empting state law. As noted above, the Supreme Court held in *City of New York* that Congress' mandate that the FCC "from time to time, as public convenience, interest, or necessity requires, shall— ... (f) Make such rules and regulations and prescribe such restrictions and conditions ... as may be necessary to carry out the provisions" of the communications laws authorized the FCC to pre-empt state standards governing television signals. *City of New York*, 486 U.S. at 66–67, 108 S.Ct. at 1643–44 (quoting 47 U.S.C. § 303(r)). Similarly, the Court concluded in *de la Cuesta* that where Congress had provided that the Federal Home Loan Bank Board was "authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation" of federal savings and loan associations, the Board properly pre-empted state restrictions on due-on-sale practices. *de la Cuesta*, 458 U.S. at 160, 170, 102 S.Ct. at 3026, 3031 (quoting 12 U.S.C. § 146(a)(1)). The Court held that the language of § 146 placed no limits on the Board's authority to regulate the lending practices of federal savings and loans. *Id.* at 161, 102 S.Ct. at 3026.

In the only reported case construing VSTA, the United States District Court for

the Central District of Illinois held that Congress authorized USDA, through APHIS, to pre-empt state laws. *Lynnbrook Farms v. Smithkline Beecham Corp.,* 887 F.Supp. 1100, 1104 (C.D.Ill.1995). The court found that the language in 21 U.S.C. §§ 154 and 159 is no less broad than that interpreted in *City of New York,* in which the Supreme Court found that Congress had empowered the FCC to pre-empt state law. *City of New York,* 486 U.S. at 66–67, 108 S.Ct. at 1643–44.

Murphy concedes that Congress has provided APHIS with some pre-emptive power, but argues that APHIS lacks authority to pre-empt state tort claims absent an "express preemption provision" in VSTA itself. The plaintiff points to Section 4(b) of Executive Order No. 12,612:

> Where a Federal statute does not preempt State law ..., Executive departments and agencies shall construe any authorization in the statute for the issuance of regulations as authorizing preemption of State law by rule-making only when the statute expressly authorizes issuance of preemptive regulations or there is some other firm and palpable evidence compelling the conclusion that the Congress intended to delegate to the department or agency the authority to issue regulations preempting State law.

Exec.Order No. 12,612, 52 Fed.Reg. 41,685 (1987), *reprinted in* 5 U.S.C. § 601 note.

■ Executive Order No. 12,612, however, does not operate to invalidate an agency's pre-emption of state law. Rather, the order serves only as a guideline for executive agencies. This intent is manifested by section 8 of the order, entitled "Judicial Review": "This Order is intended only to improve the internal management of the Executive branch, and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person." *See also State of Kan. ex rel. Todd v. United States,* 995 F.2d 1505, 1511 (10th Cir.1993) (judicial review is not available for an agency's alleged violation of Executive Order No. 12,612). Furthermore, the Supreme Court has held that "[a] pre-emptive regulation's force does not depend on express congressional authorization to displace state law." *City of New York,* 486 U.S. at 64, 108 S.Ct. at 1642 (quoting *de la Cuesta,* 458 U.S. at 154, 102 S.Ct. at 3023).

We therefore agree with the holding in *Lynnbrook Farms,* and conclude that VSTA allows APHIS to pre-empt state law. We therefore proceed to the next step of our analysis, i.e., determining whether APHIS has exercised its authority to pre-empt common law damages actions.

### 2. *Has APHIS acted to pre-empt state common law?*

9 C.F.R. §§ 101–124 contain APHIS' regulations promulgated under VSTA. In 1992, APHIS issued a final rule amending "the regulations pertaining to restrictions which may be imposed by States on the distribution and use of veterinary biological products." 57 Fed.Reg. 38,758 (1992) (to be codified at 9 C.F.R. § 102). To determine whether APHIS intended its regulations to pre-empt state law with respect to animal vaccines, it is helpful to examine the agency's interpretation of VSTA as expressed in the agency's discussion of the final rule amending 9 C.F.R. § 102:

> [One purpose of the rule is] to clarify APHIS' position that restrictions on the distribution and use of Federally licensed veterinary biological products may be imposed by a State or other jurisdiction *when such restrictions are based on local disease conditions.*
>
> ....
>
> Seven commenters indicated that States should have the authority to add to Federal restrictions.... *APHIS ... does not agree that States should be allowed to add various restrictions ...* based upon a need to protect domestic animals or the public health, interest, or safety. *Any restrictions, other than those which are necessary to address a local disease condition, should be Federally imposed so that they are uniform nationwide.*

The legislative history relating to the 1985 amendments to [VSTA], which extends USDA's authority over veterinary biologics, clearly expresses Congressional

intent that Federal regulation of veterinary biologics is needed to prevent and eliminate burdens on commerce and that there is a need for uniform national standards regarding these products. Therefore, *States are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency or purity of a product. Similarly, labeling requirements which are different from or in addition to those in the regulations under [VSTA] may not be imposed by the States.*

. . . .

This rule does not preempt any State or local laws, regulations, or policies, where they are necessary to address local disease conditions or eradication programs. However, *where safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field. This includes but is not limited to the regulation of labeling.* Under [VSTA], Congress clearly intended that there be national uniformity in the regulation of these products.

57 Fed.Reg. at 38,758–59 (emphasis added).

The plaintiff contends that APHIS only intended to pre-empt state "regulation" of animal vaccines, such as licensing, not common law remedies. The plaintiff points to APHIS' statement that "Congress clearly stated that there be national uniformity in the *regulation* of these products." 57 Fed. Reg. at 38,759 (emphasis added). According to Murphy, the APHIS regulations supersede only "positive enactments," i.e., state statutes and regulations, not common law actions. The plaintiff also argues that APHIS intended that its regulations set only minimum standards, and that the agency meant to leave tort remedies intact.

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court examined statutory language similar to that contained in the APHIS regulations. *Cipollone* dealt with the issue of whether the 1969 amendments to the Federal Cigarette Labeling and Advertising Act pre-empted the petitioner's state law claims against the cigarette manufacturer. *Id.* at 506, 112 S.Ct. at 2613. The pertinent language of the Act provided as follows: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).

Rejecting the petitioner's argument that the phrase "[n]o requirement or prohibition" limited the Act's pre-emptive scope to positive enactments by state legislatures and agencies, the Court held that the phrase "sweeps broadly and suggests no distinction between positive enactments and common law." *Cipollone* at 521, 112 S.Ct. at 2620. The Court was not bothered by the fact that the law suggested that Congress was primarily concerned with "regulations." *Id.* at 521 n. 19, 112 S.Ct. at 2620 n. 19 (citing 15 U.S.C. § 1331(2)(b)). The Court noted that "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Id.* at 521, 112 S.Ct. at 2620.

The plaintiff points out that while the Supreme Court held that the 1969 Amendments to the Federal Cigarette Labeling and Advertising Act pre-empted the petitioner's failure to warn claims, the Court concluded that the Act did not pre-empt the petitioner's express warranty, intentional fraud and misrepresentation, and conspiracy claims. *Cipollone* at 528–29, 112 S.Ct. at 2624. Murphy apparently believes that the Court's holding that the Act did not pre-empt all common law claims lends support to the plaintiff's argument that his common law claims are not pre-empted by APHIS.

The Supreme Court made clear, however, that the pre-emptive scope of the 1969 Act was governed entirely by the Act's express language. *Id.*, 505 U.S. at 517, 112 S.Ct. at 2618. The language interpreted by the Court in *Cipollone* was quite specific: "No requirement or prohibition based on smoking and health shall be imposed under State law *with respect to the advertising or promotion* of any cigarettes the packages of which are [lawfully] labeled." 15 U.S.C. § 1334(b) (emphasis added). The plain language of the Act demonstrated that the statute's pre-emptive reach was limited to state law governing advertising or promotion, and for that reason

the statute did not pre-empt all of the petitioner's claims. In contrast, the language used by APHIS is quite broad: the agency pre-empts state requirements "regarding the safety, efficacy, potency or purity" as well as the labeling of animal vaccines. Therefore, the fact that the *Cipollone* Court found that the Federal Cigarette Labeling and Advertising Act did not pre-empt all of the petitioner's state common law claims is not dispositive of this case.

In *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993), the Tenth Circuit applied *Cipollone* in holding that the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") pre-empted state common law as well as statutory law. *Id.* at 1179. FIFRA provided that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from [the federal requirements.]" 7 U.S.C. § 136v(b). The court held that "a common law duty is no less a 'requirement' in the preemption scheme than a state statute imposing the same burden." *Arkansas–Platte & Gulf,* 981 F.2d at 1179. *See also Kolich v. Sysco Corp.,* 825 F.Supp. 959 (D.Kan.1993) (holding that FIFRA pre-empts state law failure to warn claims).

■ The operative language used by APHIS is that "States are not free to impose requirements which are different from, or in addition to, those imposed by USDA...." 57 Fed.Reg. at 38,759. The phrase "in addition to" negates the plaintiff's argument that APHIS intended to set only minimum standards. The language used by the agency is substantially equivalent to that which the *Cipollone, Arkansas–Platte & Gulf,* and *Kolich* courts held pre-empted state common law actions. Furthermore, the court in *Lynnbrook Farms* held that the APHIS regulations pre-empted both positive enactments and common law. *Lynnbrook Farms,* 887 F.Supp. at 1105–06. We agree with this line of authority, and hold that APHIS intended to pre-empt state common law as well as state statutes.

■ Having determined that APHIS intended that its regulations pre-empt state

law, the court must give the agency's regulations "controlling weight" so long as the agency's construction of the authorizing statute is not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Because Congress authorized the Secretary of Agriculture "to make and promulgate ... such rules and regulations as may be necessary to prevent the preparation [or] sale ... of any worthless, contaminated, dangerous, or harmful ... product for use in the treatment of domestic animals," we cannot say that the agency's decision to impose regulations pre-empting state regulation of animal vaccines is "manifestly contrary" to VSTA. Furthermore, Congress expressed its intent "to prevent and eliminate burdens on [interstate and foreign] commerce and to effectively regulate such commerce." 21 U.S.C. § 159. As the *Lynnbrook Farms* court pointed out, "it would be difficult to prevent or eliminate burdens on interstate commerce if each of the 50 states could impose different regulations on animal vaccines. Thus, APHIS' reading is neither arbitrary nor capricious." *Lynnbrook Farms,* 887 F.Supp. at 1105. Because APHIS' interpretation of VSTA is neither "arbitrary, capricious, or manifestly contrary to the statute," we must defer to APHIS' decision to pre-empt any state requirements which are "different from, or in addition to, those imposed by USDA."

### 3. *Do the APHIS regulations pre-empt the state law causes of action asserted by the plaintiff?*

■ Having concluded that APHIS' regulations pre-empt state law, including common law causes of action, we must now examine the scope of the APHIS regulations to determine whether they pre-empt the plaintiff's claims. The key inquiry is "whether the legal duty that is the predicate of the common law damages action constitutes" a "requirement[ ] which [is] different from, or in addition to, those imposed by USDA." *Cipollone,* 505 U.S. at 521, 112 S.Ct. at 2620; 57 Fed.Reg. at 38,759.

APHIS regulations pre-empt state "requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product." 57 Fed.Reg. at 38,759. APHIS has also stated that states may not impose "labeling requirements which are different from or in addition to those in the regulations under [VSTA]." *Id.* Following the framework set forth in *Lynnbrook Farms,* 887 F.Supp. at 1106, in which the court held that APHIS pre-empted common law causes of action similar to those asserted here, we will now examine each count of the plaintiff's petition to determine whether the various claims have been pre-empted by APHIS.

 In Count I of his complaint, Murphy alleges that the defendant's vaccines were defective, and that as a result, the vaccines either caused or failed to prevent infections and diseases in the plaintiff's cattle. Because enforcement of the plaintiff's claim would impose a requirement "regarding the safety, efficacy, potency, or purity" of the defendant's products in addition to those requirements imposed by USDA, Count I of the complaint is pre-empted.

Counts II and III allege breach of the implied warranties of fitness for a particular purpose and merchantability. In Counts IV and V, the plaintiff claims that the defendant falsely advertised and represented its products as effective and safe. These claims similarly implicate the safety, efficacy, potency, or purity of the defendant's vaccines, and are therefore also pre-empted.

Counts VI and VII assert that the defendant failed to provide adequate warnings with its products. APHIS has stated, however, that states may not impose "labeling requirements which are different from or in addition to those in the regulations under [VSTA]." Thus, the plaintiff's failure to warn claims are pre-empted.

Count VI also alleges that Smith-Kline's negligence caused "defects, irregularities and lack of vigor, potence, safety or effectiveness" in its products. This claim is also pre-empted in that it seeks to impose upon the defendant a requirement "regarding the safety, efficacy, potency, or purity of a product."

The court regrets the fact that its decision leaves the plaintiff without a remedy at law, but unfortunately, we are left with no alternative. The court's decision is dictated by Congress's broad grant of authority to USDA, and the agency's permissible exercise of that authority.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant SmithKline's Motion for Summary Judgment (Doc. 13) is granted.