**McCARTHY & ASSOCIATES,**
**Respondent,**

v.

**JACKPOT JUNCTION BINGO**
**HALL, Appellant.**

**No. C0–92–909.**

Court of Appeals of Minnesota.

Oct. 6, 1992.

Review Denied Nov. 17, 1992.

HIS INTEREST IN THE LAND HE IS BUY-ING FROM YOU AND YOU MAY LOSE *YOUR* INTEREST IN THAT LAND ALSO.

James M. Schoessler, Jacobsen, Buffalo & Schoessler, Minneapolis, for appellant.

Ronald C. Anderson, Willmar, for respondent.

Considered and decided by SHORT, P.J., and FORSBERG and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Jackpot Junction Bingo Hall challenges the trial court's denial of its motion to dismiss for lack of jurisdiction, alleging that the trial court erred in finding that it had waived its defense of tribal sovereign immunity. We affirm.

## FACTS

Appellant is a gambling enterprise located on the Lower Sioux Reservation near Morton. Appellant is owned and operated by the Lower Sioux Indian Community. In 1937, the Community adopted a corporate charter which gave it "certain corporate rights, powers, privileges and immunities; to secure for the members of the Community an assured economic independence."

In 1985, appellant entered into two equipment lease agreements with International Game Technology for electronic bingo terminals. In April 1989, after a series of assignments, the lease agreements were ultimately transferred to respondent McCarthy & Associates.

In August 1991, respondent commenced a breach of contract action against appellant to recover more than $46,000 in allegedly past-due lease payments. Appellant brought a motion to dismiss, asserting it was immune from suit because of tribal sovereign immunity. The trial court denied appellant's motion.

## ISSUE

Did the trial court err as a matter of law in denying appellant's motion to dismiss on the grounds that appellant had waived its tribal sovereign immunity under a "sue and be sued" clause contained in its tribal corporate charter?

## ANALYSIS

On review, this court is not bound by and need not give deference to the trial

court's determination of a purely legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Rather, this court will engage in a de novo review to determine whether the trial court correctly applied the law. *Desjarlait v. Desjarlait*, 379 N.W.2d 139, 141 (Minn.App.1985), *pet. for rev. denied* (Minn. Jan. 31, 1986).

■ Appellant argues that the trial court erred in finding that the "sue and be sued" clause contained in its tribal corporate charter operated as a waiver of its tribal sovereign immunity. We disagree.

Since the earliest times of our nation's court history, Indian tribes have been recognized as being independent political communities possessing natural rights in conducting self governance.

*Tibbetts v. Leech Lake Reservation Business Comm.*, 397 N.W.2d 883, 886 (Minn. 1986) (citation omitted). One aspect of this quasi-sovereign status is that Indian tribes are generally immune from suit under the doctrine of sovereign immunity. *Duluth Lumber & Plywood v. Delta Dev.*, 281 N.W.2d 377, 383 (Minn.1979); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). Sovereign immunity is also extended to tribal agencies that are established by the tribe pursuant to its powers of self-government. *See Weeks Constr. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670–71 (8th Cir.1986) (tribal housing authority is entitled to raise defense of sovereign immunity).

■ Although tribal sovereign immunity is the general rule, it is not absolute. *Tibbetts*, 397 N.W.2d at 886. Sovereign immunity can be waived either by Congress or by the tribes themselves. *Id.* One of the ways a tribe can waive its sovereign immunity is by including a "sue and be sued" clause in a relevant document. *See, e.g., Fontenelle v. Omaha Tribe of Neb.*, 430 F.2d 143, 147 (8th Cir.1970) ("sue and be sued" clause contained in corporate charter amounted to express waiver of sovereign immunity with regard to quiet title action); *Duluth Lumber*, 281 N.W.2d at 384 ("sue and be sued" clause contained in housing ordinance adopted by tribal governing body operated as waiver of sovereign immunity).

Here, the trial court held that appellant had waived its sovereign immunity because of a "sue and be sued" clause contained in the tribal corporate charter. The pertinent portion of the charter provides that:

5.  The Community * * * shall have the following corporate powers, in addition to all powers already conferred or guaranteed by its constitution and bylaws:

    *   *   *   *   *   *

(i) *To sue and be sued in courts of competent jurisdiction within the United States;* but the grant or exercise of such power * * * shall not be deemed a consent by the Community or by the United States to the levy of judgment, lien or attachment upon the property of the Community other than income or chattels specially pledged or assigned.

(Emphasis added.)

Appellant offers three arguments in support of its position that paragraph No. 5(i) does not constitute a valid waiver of its sovereign immunity: (1) the waiver language must be contained in the lease agreements at issue in order to be effective; (2) paragraph No. 5(i), when read as a whole, only results in a waiver of sovereign immunity in cases involving specifically pledged or assigned property; and (3) the operation of the gambling enterprise is a governmental function that is governed by the tribal constitution, not the corporate charter. We will consider each of these arguments in turn.

■ 1. *Location of waiver language.* Appellant argues that there can be no waiver of sovereign immunity where the waiver language is contained only in the corporate charter, not in the lease agreements themselves. Appellant, however, offers no support for its assertion that waiver cannot be accomplished by language contained in extrinsic documents.

In *Duluth Lumber*, the court held that the Fond du Lac Housing Authority had waived its sovereign immunity by virtue of

a "sue and be sued" clause contained in an ordinance adopted by the Authority. 281 N.W.2d at 383–84. Waiver was found to exist despite the fact that it was contained in a document which was completely independent from the construction contract in dispute. *Id.*

2. *Interpretation of waiver language.* Appellant asserts that the trial court erred by failing to read the waiver language of paragraph No. 5(i) as a whole. Appellant contends that paragraph No. 5(i) creates only a very limited waiver of immunity. Appellant maintains that the Community and its corporate entities have consented to be sued only in situations where the ultimate judgment to be executed involves specially pledged or assigned property. Because the lease agreements at issue do not contain any language of pledge or assignment, appellant urges that the waiver language of paragraph No. 5(i) does not apply.

In support of this argument appellant relies on *Maryland Cas. Co. v. Citizens Nat. Bank of W. Hollywood,* 361 F.2d 517 (5th Cir.1966), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966). We find this reliance misplaced. In *Maryland Cas.,* the court considered a "sue and be sued" clause that was practically identical to the one at issue here. *Id.* at 521. However, the issue in that case was not whether the Seminole Tribe could be sued; it had already been sued and a judgment awarded against it. *Id.* at 519. Instead, the issue before the court was whether the language of the "sue and be sued" clause which precluded "levy of any judgment, lien or attachment" upon tribal property not specially pledged or assigned also precluded a garnishment action against the tribe. *Id.* at 521. Although the court found immunity from garnishment, the decision does not address the question now before this court.

■ The first clause of paragraph No. 5(i), standing alone, operates as a general waiver of sovereign immunity in lawsuits between the Community and non-tribal entities or persons. Although the second clause of paragraph No. 5(i) does contain some limiting language, that language does not place restrictions upon when the Com-

munity and its corporate entities can be sued. Rather, it addresses the issue of what tribal property will be available to satisfy judgments obtained as the result of successful suits against the Community.

The issue here is not whether respondent can enforce a judgment against appellant in the absence of any pledge or assignment. The issue is whether appellant can be sued to begin with. We hold that it can.

■ 3. *Distinction between governmental and corporate functions.* Appellant asserts that, even if paragraph No. 5(i) does constitute a valid waiver of sovereign immunity, it does not bind appellant because it is a governmental entity governed by the tribal constitution, not a corporate entity governed by the charter. Because the tribal constitution does not contain a waiver clause, appellant argues that it is still entitled to sovereign immunity.

The distinction between governmental and corporate entities is being raised for the first time on appeal. The document entitled "Tribal Constitution and Bylaws" that appellant relies on was never presented to the trial court. On appeal this court may review "only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thayer v. American Fin. Advisers* 322 N.W.2d 599, 604 (Minn.1982). Accordingly, this court will not address that argument. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

## DECISION

The trial court properly denied appellant's motion to dismiss for lack of jurisdiction finding that appellant was not entitled to raise the defense of tribal sovereign immunity because it had been waived.

Affirmed.