Randy and Patricia **BRANDT**, husband and wife, Respondents,

v.

The **MARSHALL ANIMAL CLINIC**, et al., etc., Respondents,

and

**SmithKline Beecham Corporation**, a Pennsylvania corporation, Appellant.

No. C5–95–1178.

Court of Appeals of Minnesota.

Nov. 28, 1995.

Review Denied Feb. 9, 1996.

David R. Marshall, Terri A. Georgen, Fredrikson & Byron, P.A., Minneapolis, James A. Davis, Davis & Associates, P.A., Fremont, for Randy and Patricia Brandt.

John R. Rodenberg, Berens, Rodenberg & O'Connor, New Ulm, for Marshall Animal Clinic, et al., etc.

Scott A. Smith, Janell M. Gabor, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for SmithKline Beecham Corporation.

Considered and decided by CRIPPEN, P.J., and LANSING and HARTEN, JJ.

## OPINION

CRIPPEN, Judge.

We must determine on this appeal whether federal regulation of the preparation and sale of animal vaccines preempts use by the Minnesota courts of common law remedies otherwise available to farm operators alleging economic loss suffered as a result of

defective vaccines. Acknowledging that federal agency authority may preempt state regulation of the preparation and sale of animal vaccines, respondents Randy and Patricia Brandt argue that the agency authority does not preempt state courts from deciding common law liability disputes. The trial court refused a summary judgment motion of appellant SmithKline Beecham Corporation, determining that most of the Brandts' common law claims were not preempted and certifying for appellate review the question of whether respondents state law claims were preempted. We answer the certified question in the affirmative, reversing the trial court and remanding for entry of summary judgment for appellant on respondents' state law claims.

## FACTS

In the final version of their complaint, respondents, who own a dairy herd in Lyon County, assert that on two separate occasions in 1989 and 1991 their cattle were vaccinated by a Marshall Animal Clinic veterinarian with animal vaccines manufactured and sold by appellant SmithKline, and that their cattle subsequently became ill, produced less milk, and lost weight. Most of the cattle ultimately died.

Respondents stated separate theories of recovery against SmithKline, including strict liability, defective design, negligence, misrepresentation, fraud in false advertising, fraudulent concealment of known defects, and breach of implied warranties of merchantability and fitness. Each of three vaccines at issue was licensed by the United States De-

partment of Agriculture, a federal regulatory agency, through its Animal and Plant Health Inspection Service, pursuant to the authority delegated by Congress under the Virus–Serum–Toxin Act, 21 U.S.C. §§ 151–159 (1988).[1]

SmithKline's summary judgment motion was presented to the trial court on the ground that the Brandts' state law claims were preempted in their entirety by an express Inspection Service declaration of preemption of state law regarding the safety, efficacy, purity, potency or labeling of the animal vaccines it licenses. Although the trial court denied summary judgment on most claims, the court dismissed with prejudice respondents' "failure to warn" claims.[2] The Marshall Animal Clinic joined in the Brandts' opposition to SmithKline's preemption claim.

## ISSUE

Does federal law preempt respondents' state law claims for harm to animals purportedly caused by federally licensed animal vaccines?

## ANALYSIS

### I. Standards of Review

Because the issues before the trial court were solely legal, this court decides the case de novo and need not give deference to the trial court's conclusions. *McCarthy & Assoc. v. Jackpot Junction Bingo Hall*, 490 N.W.2d 156, 157–158 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992) (citing *Frost–*

1. All animal vaccines marketed in the United States are regulated by the Department in accordance with the authority entrusted to it by Congress under the Act. 21 U.S.C. §§ 151–159 (1988). The Department's Inspection Service (the Animal and Plant Health Inspection Service) is responsible for administering the Act. *Foundation on Economic Trends v. Lyng*, 680 F.Supp. 10, 11 (D.D.C.1988).

2. As to the Brandts' failure to warn claims, the trial court cited *CSX Transp. v. Easterwood*, 507 U.S. 658, —— ——, 113 S.Ct. 1732, 1743–1744, 123 L.Ed.2d 387 (1993) (holding preemptive language in Federal Railroad Safety Act did not preempt state common law claims based on absence of warning devices but did preempt negli-

gence claims based on excessive speed), *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (holding preemptive provisions of amended Federal Cigarette Labeling and Advertising Act did not preempt claims based on express warranty, intentional fraud, misrepresentation, and conspiracy but did preempt failure to warn claims), and *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655, 661 (Minn.1989) (holding preemptive effect of Federal Cigarette Labeling and Advertising Act preempted failure to warn claims but did not preempt other state tort claims). These authorities interpret the breadth of specific federal preemption declarations and do not govern the resolution of the issue before us.

*Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984)).

■ Where a federal agency expressly construes the statute it administers as a grant of authority to preempt state law, the agency's decision is "subject to judicial review only to determine whether [it] has exceeded [its] statutory authority or acted arbitrarily". *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153–154, 102 S.Ct. 3014, 3022–3023, 73 L.Ed.2d 664 (1982) (citing *United States v. Shimer,* 367 U.S. 374, 381–382, 81 S.Ct. 1554, 1559–1560, 6 L.Ed.2d 908 (1961)). The sole question before us is whether the Inspection Service exceeded its scope of authority; there are no allegations that the Inspection Service otherwise acted arbitrarily.

## II. Preemption Doctrine

■ The preemption doctrine stems from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land; * * * any thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. The burden of demonstrating preemption rests with the defendant. *Silkwood v. Kerr–McGee, Corp.,* 464 U.S. 238, 255, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984).

■ According to the preemption doctrine, conflicts between federal and state law are to be resolved in favor of federal law. *de la Cuesta,* 458 U.S. at 152–153, 102 S.Ct. at 3022. Federal regulations, as well as federal statutes, may give rise to preemption. *Hillsborough County Fla. v. Automated Medical Lab.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). A federal agency, therefore, acting within the scope of its congressionally delegated authority, may preempt state law. *Louisiana Pub. Serv. Comm'n. v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1898–1899, 90 L.Ed.2d 369 (1986).

■ The preemption doctrine is limited by a presumption that Congress did not intend to displace state law. *Buzzard v. Roadrunner Trucking,* 966 F.2d 777, 780 (3rd Cir. 1992) (citing *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–2129, 68 L.Ed.2d 576 (1981)). But a regulation's preemptive effect is not dependent on express congressional authorization to displace state law, and in agency preemption cases a narrow focus on congressional intent to preempt is misdirected. *de la Cuesta,* 458 U.S. at 154, 102 S.Ct. at 3022–3023.

We must engage in a three part analysis to determine whether respondents' claims are preempted by federal law. First, did Congress grant the Inspection Service the authority to preempt state law? Second, if the Inspection Service had the proper scope of authority, did it act to preempt state law? Finally, if the Inspection Service's scope of preemption included state law claims, did it specifically preempt the causes of action asserted by respondents?

## III. Scope of Authority

■ Section 154 of the Virus–Serum–Toxin Act states the authority of the Secretary of Agriculture to "promulgate from time to time such rules and regulations as may be necessary" to prevent preparation or sale of any "worthless, contaminated, dangerous, or harmful" virus, serum or toxin for use in the treatment of domestic animals. 21 U.S.C. § 154 (1988). Section 159 of the Act declares the need to "effectively regulate" and to prevent and eliminate "burdens" on interstate and foreign commerce. *Id.* at § 159.

The United States Supreme Court has held that congressional grants of authority similar to those contained in this Act confer upon federal agencies the authority to preempt state law. In *City of New York,* the Court held that Congress's mandate to the Federal Communications Commission that it from time to time "[m]ake such rules and regulations and prescribe such restrictions and conditions * * * as may be necessary to carry out the provisions" of the communications laws authorized the agency to preempt state television quality standards. *City of New York v. FCC,* 486 U.S. 57, 67, 108 S.Ct. 1637, 1643–1644, 100 L.Ed.2d 48 (1988) (quoting 47 U.S.C. § 303(r)).

In support of its decision, the *City of New York* Court cited Congress' statement that it intended to "establish a national policy con-

cerning cable communications" and to "minimize unnecessary regulation that would impose an undue economic burden on cable systems." *Id.*, 486 U.S. at 61, 108 S.Ct. at 1640–1641 (quoting 47 U.S.C. §§ 521(1), (6) (1982 ed., Supp. IV). *See also de la Cuesta*, 458 U.S. at 160, 170, 102 S.Ct. at 3026–3031 (finding preemption authority of the Federal Home Loan Bank Board in laws enabling it "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation" of savings and loan banks) (quoting 12 U.S.C. § 1464(a)(1) (1976 ed., Supp. IV). The preemptive language at issue in this case is no less broad than the language in *City of New York* and *de la Cuesta.*

■ Respondents assert that Congress intended to preserve state law claims by providing only minimum standards in the Virus–Serum–Toxin Act[3] and by excluding an express preemption provision from the Inspection Service's governing statute. The trial court was persuaded by this argument. As noted above, the Supreme Court has held that authority for agency preemption does not depend on express congressional authorization. *City of New York*, 486 U.S. at 64, 108 S.Ct. at 1642 (quoting *de la Cuesta*, 458 U.S. at 154, 102 S.Ct. at 3022–3023). Moreover, if policy objections to preemption are advanced, we find no authority for the proposition that these concerns can be employed to limit the breadth of preemption that is rooted in broad regulatory powers granted by Congress.

More particularly addressing the breadth of Inspection Service preemption, respondents acknowledge that Congress provided the Service with the power to preempt claims relating to product licensing regulations, to uniform national standards, and to rules on the labeling of animal vaccine products, but they argue that preemption of state law claims for damages due to defective products are outside the agency's Congressionally designated scope of authority.

■ Respondents point to § 4(a) of Executive Order No. 12612, which instructs agencies that they should recognize statutory authorization for preemption of state law only

> when the statute contains an express preemption provision or there is some other firm and palpable evidence compelling the conclusion that the Congress intended preemption of State law, or when the exercise of State authority directly conflicts with the exercise of Federal authority under the Federal statute.

Executive Order No. 12612, 52 Fed.Reg. 41685 (1987), *reprinted in* 5 U.S.C. § 601 (1994). But this provision, to the extent it confines agency preemption, is only a guideline for executive agencies and does not serve to invalidate an agency's preemption decisions. This construction is illustrated by section eight of the order, entitled "Judicial Review":

> This Order is intended only to improve the internal management of the Executive branch, and is not intended to create any right or benefit, substantive,or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person.

*Id.* See also *State of Kan. ex rel. Todd v. United States*, 995 F.2d 1505, 1511–1512 (10th Cir.1993) (stating judicial review is not available for an agency's alleged violation of Executive Order No. 12612).

In the Virus–Serum–Toxin Act, Congress neither expressly preempted nor expressly preserved state common law remedies. By contrast, in other acts cited by respondents, Congress either specifically stated its intent to preserve state law claims or utilized restrictive language to signal this intent. *See e.g.* National Traffic and Motor Vehicle Safety Act § 108(c), 15 U.S.C. § 1397(c) (West 1982) ("Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law") (repealed 1994).

■ In legislative history, Congress stated its preference for uniform national standards pertaining to animal vaccines. S.Rep.

---

**3.** Respondents arguments contemplate common law actions involving standards independent of federal standards and do not demonstrate any evidence that the serums used here were in violation of federal standards.

No. 145, 99th Cong., 1st Sess. 1–2 (1985), U.S. Code Cong. & Admin. News 1985 at 1103, 1105. Congress was silent as to how the Inspection Service should achieve this objective. Absent any indication that the agency's policy judgment "is not one that Congress would have sanctioned," the agency's determination on the preemption question should be upheld. *Shimer*, 367 U.S. at 383, 81 S.Ct. at 1560–1561; *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (1984).

■ The United States Supreme Court has repeatedly held that the power to preempt state law may lie within the scope of a federal agency's authority (1) where Congress delegates broad authority to the agency to promulgate rules and regulations as necessary to carry out the federal act in question; (2) where Congress directs the agency to create a national, uniform system or standard; and (3) where Congress instructs the agency to eliminate undue burdens on commerce. *City of New York*, 486 U.S. at 66, 108 S.Ct. at 1643; *de la Cuesta*, 458 U.S. at 154, 102 S.Ct. at 3022–3023; *Shimer*, 367 U.S. at 381 n. 9, 81 S.Ct. at 1559–1560 n. 9. The Inspection Service acted pursuant to terms like these.

A virtually identical preemption question has been determined by a United States District Court in a case involving two animal vaccines manufactured by SmithKline. The Central Illinois District Court held that the Inspection Service acted within the scope of its Congressionally delegated authority when it found in the Virus–Serum–Toxin Act a delegation to the federal agency of the exclusive responsibility for the safety, purity, and labeling of animal vaccines and, therefore, the authorization to preempt state law claims. *Lynnbrook Farms v. Smithkline Beecham Corp.*, 887 F.Supp. 1100, 1104–1105 (C.D.Ill.1995). Another recent United States District Court case also addresses nearly identical facts and reached the same conclusion. *Murphy v. Smithkline Beecham Animal Health Group*, 898 F. Supp. 811, 817 (D.Kan. 1995). Both the *Lynnbrook Farms* and *Murphy* courts appropriately based their conclusions on an analysis of the statutory language and legislative history surrounding the Inspection Service's preemptive actions.

We conclude that the Inspection Service's course of action represents "a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." *Shimer*, 367 U.S. at 382, 81 S.Ct. at 1560. As the court said in *Murphy*:

[I]t would be difficult to prevent or eliminate burdens on interstate commerce if each of the 50 states could impose different regulations on animal vaccines.

*Murphy*, at 817 (quoting *Lynnbrook Farms*, 887 F.Supp. at 1105). Concurring with the holdings in *Lynnbrook* and *Murphy*, we find that SmithKline has met its burden of overcoming the presumption that Congress did not intend to grant the Inspection Service authority to displace state law.

## IV. Scope of Preemption

We must then determine whether the Service preempted all state law safety and labeling requirements, including state law damages actions, which are different from or in addition to those imposed by the Service. Respondents assert that the Service only intended to preempt "regulation" of animal vaccines, such as might occur in an administrative licensing process, and that it did not intend to preempt state common law decisions.

■ The Inspection Service's responses to comments and interpretive statements recited in the Federal Register at the time of a recent amendment to the Virus–Serum–Toxin Act indicate that the Service contemplated a broader scope of preemption than is recognized by respondents. After reviewing legislative history on the need for uniform national standards, the agency declared that "[s]tates are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product." 57 Fed.Reg. 38758, 38759 (1992). Such state requirements, the agency added, "would thwart the Congressional intent regarding uniform national standards and would usurp USDA's authority to determine which biologics are pure, safe, potent, and efficacious." *Id.* Finally, the Service said, regarding

product safety and purity, "it is the agency's intent to occupy the field." *Id.* The agency added: "This includes but is not limited to the regulation of labeling." *Id.*

Additionally, the Inspection Service rejected public comments suggesting that its standards should be viewed as minimum requirements and that states have the authority to add additional requirements at their discretion. The Service does not agree that

> states should be allowed to add various restrictions, as appropriate, based upon a need to protect domestic animals or the public health, interest, or safety. Any restrictions, other than those which are necessary to address a local disease condition, should be Federally imposed so that they are uniform nationwide.

57 Fed.Reg. at 38759.

The Supreme Court reviewed statutory language like that contained in the Inspection Service's statements in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). *Cipollone* discussed whether provisions of the 1969 amendments to the Federal Cigarette Labeling and Advertising Act preempted state law claims. *Id.* at 506–507, 112 S.Ct. at 2613. The Act said that states were empowered to impose "[n]o requirement or prohibition" on advertising of cigarettes labeled in conformity with federal law. 15 U.S.C. § 1334(b) (1982). In rejecting an argument that the phrase "no requirement or prohibition" limited the Act's preemptive scope, the *Cipollone* Court held the language "sweeps broadly and suggests no distinction between positive enactments and common law." *Cipollone*, at 521–522, 112 S.Ct. at 2620. Moreover, the Court recognized that the Act's preemptive scope was governed only by its particular language so that the Act did not preempt such common law claims as express warranty or misrepresentation but did preempt common law claims based on a failure to warn. *Id.* at 517, 522–530, 112 S.Ct. at 2618, 2621–2624. *See also Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) (holding that product safety law language that says states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from [the federal requirements]" preempted common law claims as well as statutory law claims falling within its ambit) (emphasis omitted).

The preemptive language used by the Inspection Service is similar to that examined by the Supreme Court in *Cipollone* and *Arkansas–Platte*. "States are not free," the Service said, "to impose requirements which are different from, or in addition to, those imposed by USDA." 57 Fed.Reg. at 38759. Because of the holdings that this type of language preempted state common law claims considered in *Cipollone* and *Arkansas–Platte & Gulf*, we reach the same conclusion here. *Lynnbrook Farms* and *Murphy*, holding that the particular language of the Inspection Service's declarations preempt both positive enactments and common law, further support this result. *Lynnbrook Farms*, 887 F.Supp. at 1105–06; *Murphy*, at 817.

■ The scope of agency preemption, like the meaning of Congressional enactments, is subject to a presumption that preemption of state laws is not intended. *See Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir.1988) (holding that federal vaccines regulation, which had no compensatory features until 1986, did not preempt state law claims where neither Congress nor the pertinent regulatory agency had issued any statement or declaration regarding preemption); *see also Silkwood*, 464 U.S. at 251, 104 S.Ct. at 622–623 (stating federal regulation of atomic energy that provided no injury remedy in the absence of an accident did not preempt state damage claim for radiation injuries where neither Congress nor the FDA issued any statement or declaration on preemption and Congress explicitly preserved certain state law remedies). Respondents contend that the presumption against preemption is strongest when Congress chooses not to provide a federal remedy. *Abbot*, 844 F.2d at 1112. But we find that the Inspection Service's broad and clear declaration of preemption overcomes even this heightened presumption.

■ We note respondents' attempt to distinguish this case from others because the preemptory language at issue here is not contained in the Virus–Serum–Toxin Act itself but rather in a statement of the Inspection Service printed in the Federal Register at the time of a recent amendment to the Act. At best, this changes the field of the dispute from the topic of express preemption to one of an implication of preemption by the breadth of the federal regulations and the accompanying declarations of the Inspection Service.[4] We find no cases showing that the scope of agency authority or the scope of preemption is affected by the form in which the agency makes its declaration. And the Supreme Court has stated that agencies may speak to the question of preemption through a variety of means, "including regulations, preambles, interpretive statements, and responses to comments." *Hillsborough,* 471 U.S. at 718, 105 S.Ct. at 2377–2378. We conclude that the Inspection Service, if acting within its scope of authority, could preempt state common law claims through its responses to comments and interpretive statements contained in the Federal Register.

We find, in sum, that the Inspection Service has effectively regulated commerce in animal vaccines such as to preempt all state law requirements, including state law damages actions, different from or in addition to those imposed by the Inspection Service regarding the safety, efficacy, purity, potency or labeling of animal vaccines.

## V. Preemption of Respondents' Claims

Finally, we must examine the preemptory effect of the Inspection Service's regulations on each of respondents' claims. The proper inquiry is whether the legal duty that underlies the common law damages action imposes a requirement "different from, or in addition to, those imposed by the USDA regarding the safety, efficacy, potency, or purity of a product." 57 Fed.Reg. at 38759.

■ We find that respondents' claims in their Second Amended Complaint, namely,

claims of strict liability, defective design, negligence, misrepresentation, false advertising, and breach of implied warranties of merchantability and fitness, all impose requirements different from or in addition to the Inspection Service's standards. Likewise, the courts in *Lynnbrook Farms* and *Murphy* held that claims nearly identical to those asserted by respondents were preempted because they imposed requirements that were different from or in addition to the Inspection Service's requirements. *Lynnbrook Farms,* 887 F.Supp. at 1106. *Murphy,* at 818.

It is worthy of note that both the courts in *Lynnbrook Farms* and *Murphy* and the trial court below expressed concern and regret for the remedies lost by preemption in these cases. We are mindful of these concerns. But the Inspection Service's broad determinations of preemption, which represent a permissible course of action under a broad grant of Congressional authority, do not give us liberty to withhold the conclusion that respondents' common law claims are federally preempted.

## DECISION

We affirm the trial court's decision that the respondents' common law failure to warn claims were preempted, but reverse the court's decision that respondents' remaining common law claims were not preempted. We answer the trial court's certified question in the affirmative, confirming that respondents' state law claims are preempted, and we remand for entry of summary judgment for appellant.

**Affirmed in part, reversed in part.**

4. Congress may preempt state law through express or implied preemption. Express preemption occurs where Congress' intent to preempt is explicitly stated in the statute's purpose. Implied preemption occurs where Congress' intent to preempt is implicitly contained in the statute's structure or purpose. *Cipollone,* 505 U.S. at 515–522, 112 S.Ct. at 2617–2620.